UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| AMINA MASSAQUOI, | : | Bankruptcy No. 07-10756DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, United States Bankruptcy Judge**

Before the Court is the (1) Motion to Modify Confirmed Plan ("Modification Motion") filed by Anna Massaquoi ("Debtor") and (2) Debtor's Objection to Amended Proof of Claim (the "Objection") filed by AmeriCredit Financial Services, Inc. ("AmeriCredit"). A hearing was scheduled on both matters for July 24, 2008 during which a colloquy ensued with counsel in an effort to ascertain the issues presented by the disputed matters. After recessing to allow counsel to frame the issues and the record to be made, the parties agreed that I should address the Objection first since disallowance of the amended claim would eliminate any further obligation by Debtor to AmeriCredit as the proposed plan modification provides.

The Debtor avers that the amended claim for an unsecured deficiency must be disallowed because (1) it is untimely; (2) the sale of Americredit's collateral was conducted in a commercially unreasonable manner; and (3) the claim is unitemized, undocumented and unsubstantiated beyond subjectively generated documents. The record that would inform my resolution of these grounds, they agreed, would be a stipulation of facts to be subsequently filed (the "Stipulated Facts").[1] When I made clear that the record to be offered at this hearing would be the entire record I would consider to resolve <u>all</u> issues raised by Objection, and not merely the timeliness issue that was the thrust of Debtor's argument, Debtor's counsel called the Debtor to testify. AmeriCredit, which did not have a witness present, offers only the Stipulated Facts.[2]

**BACKGROUND**

On March 2, 2004, Debtor purchased a 2001 Infiniti QX4 (the "Vehicle"), the purchase contract for which was contemporaneously assigned to AmeriCredit. Stipulated Facts ¶¶ 1-2. On February 6, 2007, Debtor filed this case under Chapter 13. The claims bar date was August 7, 2007. On February 21, 2007, AmeriCredit filed Proof of Claim 2-1, listing the value of the Vehicle as $14,975.00. Claim 2-1 alleged a fully secured

---

[1] The Stipulated Facts were filed on August 26, 2008. Doc. No. 170.

[2] AmeriCredit's counsel attaches certain documents to its brief as "additional evidence." Brief in Support of Response to Debtor's Objection at 11. These documents were not part of the Stipulated Facts. Documents attached to briefs are not evidence and will not be considered by the Court. In re MacDonald, 222 B.R. 69, 72 (Bankr. E.D. Pa. 1998) (loan documents attached to brief as exhibits and not offered into evidence cannot be considered); In the Matter of Holly's, Inc., 190 B.R. 297, 301 (Bankr. W.D. Mich. 1995) (documents attached to brief not admitted into evidence and will not be considered).

2

claim of $14,350.31, which represented a balance of $10,751.58 and $3,598.33 interest over the life of the Plan. Stipulation ¶6.

On November 29, 2007, the Court entered an Order confirming Debtor's Sixth Amended Plan (the "Confirmed Plan"). The Confirmed Plan provided for AmeriCredit's claim as follows: (1) arrears in the amount of $1,054.86 would be paid through the Plan; and (2) monthly payments to Creditor in the amount of $530.00 (the correct amount is actually $527.43) would be paid "outside of the Plan" by the Debtor and directly to Creditor. Stipulated Facts ¶¶ 10-11. Also significant is the Plan provision that all unsecured claims would be paid in full.

Debtor did not make the required payments to AmeriCredit, triggering a motion for relief from stay on January 25, 2008. Doc. No. 112. The Motion averred that the Debtor was in default of her payment obligation which was alleged to be $10,751.98 of which $527.43 represented post-petition arrears, that the wholesale value of the Vehicle was $11,850 and that AmeriCredit's interest was not adequately protected. Id. AmeriCredit also contended that it was "in a more advantageous position to obtain an optimum price for the sale of the collateral thereby increasing the possibility of generating a surplus for distribution to creditors of the estate." Id. ¶12. After an evidentiary hearing held on February 19, 2008, relief was granted that day. Doc. No. 124.[3]

Debtor testified that about a week after relief was granted, she returned home to find that the Vehicle which she had left in her driveway had been repossessed. She had no prior

---

[3] The Order proposed by AmeriCredit's counsel provided, inter alia, that any surplus obtained by AmeriCredit after liquidation of the collateral and satisfaction of its lien would be remitted to the Trustee.

3

or subsequent notice by mail or telephone from AmeriCredit regarding the disposition of the Vehicle.  Commencing the week of the repossession she tried to contact AmeriCredit to find out how she might buy the Vehicle back.  She was told it was too late, the Vehicle was gone and AmeriCredit no longer had any control over its disposition. Tr. at 10.  Her subsequent messages left to Gina at AmeriCredit were to no avail.

On cross-examination AmeriCredit's counsel showed her a two page document attached to its proof of claim directed to her at an address she confirmed was correct.  Exhibit C-1.  Dated April 7, 2008, the document is a Notice of Our Plan to Sell Property and a Notice of Right to Redeem (the "Sale Notice").  The Sale Notice advised that the Vehicle was being stored at Allstate Recovery in Philadelphia and would be sold at private sale fifteen days from the date of the notice, i.e., April 22, 2007, if the account of $13,516.52 was not previously paid.  As noted, Debtor denies having received this document.  The Vehicle was subsequently sold by AmeriCredit.  Stipulated Facts ¶ 17.

Given the repossession of the Vehicle, on June 25, 2008 Debtor filed a Motion to Modify Confirmed Plan (the "Modification Motion") to eliminate further payment obligations to AmeriCredit based on her view that they have been extinguished for the purposes of this Chapter 13 bankruptcy.[4]  Modification Motion ¶ 4.

AmeriCredit has objected to the Modification Motion, contending that the deficiency resulting from the sale of the Vehicle is entitled to be treated as an unsecured claim in this Chapter 13 proceeding.  To underscore that point, it filed an Amended Proof of Claim 2-4

---

[4] Relief from stay had also previously been granted with respect to Debtor's residence, and Debtor seeks to modify her Plan to remove that obligation as well.

(the Amended Claim") asserting an <u>unsecured</u> claim in the amount of 6,207.08.[5] Attached to the proof of claim is an AmeriCredit "POC Calculation." Starting with the original secured claim of $10,751.98, AmeriCredit deducts Vehicle sale proceeds of $5,200 and $110.40 for Trustee distributions and adds back costs associated with the sale to arrive at the new deficiency claim. Since the Confirmed Plan provides for a 100% distribution to unsecured creditors, an allowed unsecured claim would provide AmeriCredit with the same recovery as the Plan provided for its secured claim, with the exception of interest provided on a secured claim over the life of the Plan.

**DISCUSSION**

A.

The facts of this case as they relate to bankruptcy issues are fairly commonplace in Chapter 13 proceedings. A debtor intending to retain a car that is collateral to an auto lender

---

[5] Claim 2-2 dated June 30, 2008 was filed on July 2, 2008 and was identified as a "potential deficiency claim," reserving the right to amend. It stated that the value of the Vehicle was $14,300, and a secured claim of $8,156.82 was asserted. On July 3, 2008 Debtor filed the Objection. On July 16, 2008 Claim 2-3 was filed now asserting a secured claim of $6,207.08 based on a Vehicle value of that amount. It was withdrawn on July 17, 2007, the day that Claim 2-4 was filed. According to AmeriCredit counsel, the proofs of claim were prepared at AmeriCredit and are under the signature of Alice Whitten, attorney. Americredit's counsel explained that both Claim 2-2 and 2-3 were amended because they should have been filed as unsecured, not secured, and Claim 2-2 was furthermore incorrect because someone thought Debtor still had the Vehicle. At the hearing on the Objection to Claim 2-2 held on July 24, 2008, I learned that Debtor was not served with nor notified of the filing of the July proofs of claim notwithstanding the imminence of the Objection hearing. Based on her counsel's cursory review of the amendments, she was prepared to go forward with the Objection without prejudice to her right to supplement the Objection based on further review of the newly Amended Claim. No such supplementation was filed, and the parties agreed in the Stipulated Facts that the Objection is directed at Claim 2-4.

5

provides under her plan for a claim secured by the vehicle.[6] The plan is confirmed but the debtor cannot perform. She either surrenders the car or the creditor seeks and secures relief from stay, both with the intention of liquidating the collateral. Upon sale, the proceeds are less than the secured claim.

In this case, the Debtor seeks to be relieved of any further payment obligations to the car lender, and hopes to accomplish that end by modifying her Confirmed Plan. The car lender seeks to have the remaining obligation arising from its deficiency treated as an unsecured claim and thus objects to the Modification Motion. While not connecting the dots to the Confirmed Plan which now treats it as the holder of a secured claim, AmeriCredit has filed an amended proof of claim that asserts its alleged deficiency.

The parties have filed briefs discussing the cases that have addressed this factual scenario. These and others I have found reveal a divergent view on the relevant bankruptcy issues. See In re Hibble, 371 B.R. 730, 733 (Bank. E.D. Pa 2007) (discussing cases). Because of the unsettled nature of the law in this Circuit, I turn first to that aspect of the Objection that lends itself to review on principles that are well established. Thus, rather than considering whether the Amended Claim is timely by reason of the relation back doctrine, I will for the moment assume that it is and address the merits of the Objection to the Amended Claim. Specifically, has AmeriCredit established a deficiency claim under applicable state law. If it has not, the Modification Motion should be granted to remove

---

[6] This case does not implicate the hanging paragraph of § 1325(a)(5).

Debtor's obligation for further payment to AmeriCredit and the Amended Claim should be denied without having to reach the timeliness question.[7]

### B.

Bankruptcy Rule of Procedure 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure constitutes prima facie evidence of the validity and amount of the claim. Amatex Corporation v. Aetna Casualty & Surety Co., et al., 107 B.R. 856, 870 (E.D. Pa. 1989); In re Wall to Wall Sound & Video, Inc., 151 B.R. 700, 701 (Bankr. E.D. Pa. 1993). The objecting party carries the burden of going forward with evidence in support of its objection which must be of probative force equal to that of the allegations of the creditor's proof of claim. "[T]he objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Allegheny International, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). The claim's legal sufficiency is determined by state law, in this case the Uniform Commercial Code as enacted in Pennsylvania (the "PUCC") which governs the rights and obligations of secured parties with respect to disposition of collateral.[8] If the objecting party

---

[7] This is not to conclude that if a deficiency claim exists that an amended proof of claim is required in order to participate as an unsecured creditor under the Plan. As noted, the cases have taken varied approaches, including recognition of a creditor's right to file a motion for reconsideration under § 502(j), a vehicle not utilized by AmeriCredit here.

[8] While issues of claim allowance are decided under bankruptcy law, state law governs the substance of claims. Travelers Cas. & Sur. Co. of Am. v. PG&E, 549 U.S. 433, 127 S.Ct. 1199, 205 (2007).

In her [Amended] Objection to (Amended) Proof of Claim No. 2-4 of AmeriCredit (Doc. No.
(continued...)

succeeds in overcoming the prima facie effect of the proof of claim, the ultimate burden of persuasion then rests on the claimant. Id.

The burdens in this particular case are also informed by state law. Debtor contends that AmeriCredit's failure to provide notice to her and to obtain a commercially reasonable sale price for the Vehicle extinguishes any remaining obligation for a deficiency judgment and requires disallowance of the Amended Claim. As the Third Circuit Court of Appeals stated in United States v. Tabor Court Realty Corp., 803 F.2d 1288 (3d Cir. 1986),

> When a private sale[9] of repossessed collateral has been made, and the debtor questions the reasonableness of that sale, the great weight of authority holds that the burden of proof is shifted to the secured party seeking a deficiency judgment to show that under the totality of circumstances the disposition of collateral was commercially reasonable.

---

[8](...continued)
164), Debtor recognized the applicability of the PUCC but also references the Motor Vehicle Sales Finance Act, 69 P.S. 601, *et seq.* (the "MVSFA") for her assertion that the Vehicle was not sold in a reasonably commercial manner. The MVSFA is certainly applicable to aspects of repossession of motor vehicles and is thus to be construed *in pari materia* with the Pennsylvania Uniform Commercial Code. Whiteman v. Degnan Chevrolet, Inc., 272 A.2d 144, 247 (Pa. Super. 1970). However, the MVSFA is silent with reference to procedures governing the disposition of repossessed vehicles, whereas the PUCC does provide for regulatory control over the disposition of repossessed collateral, including motor vehicles. Industrial Valley Bank and Trust v. Nash, 502 A.2d 1254, 1262 (Pa. Super. 1985). Accordingly, this Memorandum Opinion considers AmeriCredit's compliance with the applicable provisions of the PUCC required to entitle it to a deficiency claim.

[9] While no evidence of the sale was produced and although the Stipulated Facts do not so state, the parties appear to agree that disposition of the Vehicle was by private sale.

Id. at 1306; Savoy v. Beneficial Consumer Discount Co., 468 A.2d 465, 467 (Pa. 1983).[10]

Against the framework of these required proofs, I will examine the record, such that it is.

1.  Notice

The PUCC requires a secured creditor disposing of collateral to send the debtor a reasonable notification of disposition, 13 Pa. C.S.A. § 9611(b), within a reasonable time, 13 Pa. C.S.A. § 9612.[11] The notice requirement is aimed at protecting a debtor from the "unfair imposition of a deficiency claim by allowing him to attend or bring other potential buyers to the sale, thereby preventing a disposition of the collateral for less than its fair market value." Chrysler Credit Corporation, 834 F. Supp. at 833. It also ensures that the

---

[10] While Savoy and the other cases discussed herein pre-date the revisions to the PUCC in 2001, I note that the vitality of this shifting burden appears to be recognized by § 9626 (Action in which a deficiency or surplus is in issue). Subsection (a) of that section, which only addresses non-consumer transactions, shifts the burden to the creditor to prove "compliance with the provisions of this chapter" when the issue is raised by the debtor. Subsection (b) addresses consumer transactions and states:

> The limitation of the rules in subsection (a) to transactions other than consumer transactions is intended to leave to the court the determination of the proper rules in consumer transactions. The court may not infer from that limitation the nature of the proper rule in consumer transactions and <u>may continue to apply established approaches.</u>

13 Pa. C.S.A. § 9626(b) (emphasis added).

[11] The information required in a notice and a sample form for a consumer goods transaction is provided by § 9614. Debtor contends that she never received <u>any</u> notice of disposition of the Vehicle and thus does not challenge the form of notice attached to AmeriCredit's proof of claim.

Otherwise referring to the PUCC, Debtor's memorandum cites to former PUCC § 9504(c), relying on Chrysler Credit Corporation v. B.J.M. Jr., Inc., 834 F. Supp. 813, 832 (E.D. Pa. 1993), and apparently failing to recognize that the PUCC underwent a significant rewriting and renumbering in 2001. I will cite to the current provisions, which differ only slightly in wording and enumeration.

9

secured party proceeds in a commercially reasonable manner. Even if the debtor does not avail himself of the opportunities provided by the notice prior to the disposition, the notice allows him to more effectively challenge the disposition after its occurrence. General Electric Capital Corp. v. Flynn, 1993 WL 232292, * 3 (E.D. Pa. June 23, 1993).

In this case, Debtor testified that she did not receive the Sale Notice attached to AmeriCredit's proof of claim. Tr. at 21. She convincingly explained her efforts to contact a responsible AmeriCredit representative after the Vehicle was repossessed for the purpose of discussing a redemption but was told that the Vehicle had been moved out of state and was not within the respondent's control. Follow-up phone calls were not returned. This is the only evidence presented on the issue of notice.[12] It was sufficient under both bankruptcy and state law to shift the burden to Americredit to prove that notice was provided.

On cross-examination, AmeriCredit did not impair the credibility of Debtor's testimony. More significantly, it failed to present any witness to testify that notice was actually sent. Its effort to establish receipt by showing Debtor the notices addressed to her at her residence that were attached to its Amended Claim (the "Sale Notices") was unproductive since she disclaimed receiving them. On this record, I find that no notice was provided to debtor as required by the PUCC.

---

[12] Indeed it would appear that by its post-hearing effort to introduce evidence by attaching documents to its brief, AmeriCredit has recognized the deficiency of its proof. See note 2 supra.

2. Price

In addition to the failure of notice, Debtor challenges the commercial reasonableness of the sale of Vehicle based on the price obtained. Specifically she notes that the reported sale price of $5,200 is far less than the value AmeriCredit fixed for the Vehicle in its motion for relief ($11,850) filed less than six months earlier on January 25, 2008 as well as its original proof of claim ($14,975) filed on February 21, 2007.[13] A disparity between the price received and the estimated value of the asset is relevant to a determination of commercial reasonableness. Chrysler Credit, 834 F. Supp. at 834. A gross disparity between the sale price and a reasonable measure of collateral value may be sufficient to show commercial unreasonableness absent evidence that adequate steps were taken to ensure a fair price was received. General Electric Credit, 1993 WL 232292, at *4.

Debtor's evidence required AmeriCredit to counter with evidence of the steps it took to ensure a fair price, steps that it had represented in support of its motion for relief it was in the most favorable position to employ to maximize value at sale. When a challenge is made, the party seeking the deficiency must "show that, under the totality of circumstances, the disposition of the collateral was commercially reasonable." Savoy, 486 A.2d at 467; accord General Elec. Capital, 1993 WL 232292, at *3. Under the PUCC,

---

[13] Indeed a value of $14,300 was disclosed in Proof of Claim 2-2 filed on June 30, 2008. Notably this claim was filed after the Vehicle had been sold. While AmeriCredit's counsel stated that this Proof of Claim was erroneous because the AmeriCredit in-house attorney who filed it did not know the Vehicle had been sold, it can be inferred that someone at AmeriCredit believed that the market value at that time was $14,300. This verified representation gives further substance to the Debtor's concern that a commercially reasonable value may not have been realized for the sale.

11

a commercially reasonable disposition is one that is made (1) in the usual manner on any recognized market; (2) at the price current in any recognized market at the time of the disposition; or (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property which was the subject of the disposition. 13 Pa. C.S.A.. § 9627(b).

AmeriCredit simply put no evidence into the record to meet its burden. I do not know if the Vehicle was sold in the usual manner in a recognized market or in conformity with reasonable commercial practices because there is no evidence as to how or where it was sold. As such, I must find that AmeriCredit did not sustain its burden and conclude that the sale was not commercially reasonable.

C.

When there has been a commercially unreasonable disposition of collateral, two views have emerged as to the consequence to the secured creditor's deficiency judgment. Some courts have concluded that upon a finding of commercial unreasonableness, the creditor is barred from obtaining a deficiency judgment against the debtor. E.g., Chrysler Credit, 834 F.Supp. 2d at 837 (citing cases for this view). In Pennsylvania, however, the courts have eschewed the *per se* forfeiting of the claim in favor of a presumption that the value of the collateral is equal to the secured debt, thereby extinguishing the indebtedness unless the party rebuts the presumption. Savoy, 468 A.2d at 78. While Savoy dealt with the reasonableness of the resale price, the presumption is equally applicable to lack of notice,

the purpose behind adequate notice being to ensure a commercially reasonable sale. Chrysler Credit, 834 F.Supp.2d at 837; Fremont Financial Corp. v. Izzo (In re Rack Engineering Co.), 212 B.R. 98, 103-04 (Bankr. W.D. Pa. 1997).

As I have concluded that AmeriCredit failed to prove that notice was provided and that the collateral was disposed consistent with PUCC § 9627(b), I shall presume that the value of the vehicle is equal to its secured claim. In order to rebut that presumption, AmeriCredit was required to prove that the sale resulted in the fair and reasonable value of the Vehicle being credited to the Debtor's account. Where, as here, "the record is without a scintilla of evidence as to the fair market value of the automobiles sold, [the creditor] has not rebutted the presumption that the value of the collateral is equal to the balance due . . ." Delahanty v. First Pennsylvania Bank, N.A., 464 A.2d 1243, 1268 (Pa. Super. 1983). The consequence is that AmeriCredit does not have a deficiency that may be asserted as an unsecured claim.

For the preceding reasons, Debtor's Objection to the Amended Claim is Granted. AmeriCredit's unsecured claim is disallowed, and Debtor's Modification Motion is Granted. An Order consistent with the foregoing shall be entered.

*Diane W. Sig*

_____
DIANE WEISS SIGMUND
United States Bankruptcy Judge

Dated: November 6, 2008